UNITED STATES DISTRICT COURT
for the
NORTHERN DISTRICT OF WEST VIRGINIA

FILED
AUG 3 1 2010
U.S. DISTRICT COURT
CLARKSBURG, WV 26301

IN RE:                                    MAGISTRATE NUMBER: 1:10-MJ-00009

KATHERINE A. HOOVER MD'S            Judge John Kaull
RESIDENCE IN LOST CREEK,
HARRISON COUNTY, WEST
VIRGINIA,
ex rel West Virginia

ADDENDUM TO MOTION FOR SUMMARY JUDGMENT
AND MOTION FOR DECLARATORY JUDGMENT
BEVINS V SIX UNKNOWN

NOW COMES KATHERINE A. HOOVER MD, pro se, and requests the Magistrate Judge John S. Kaull GRANT summary judgment to Katherine A. Hoover MD for lack of subject matter jurisdiction and other issues; or GRANT Declaratory judgment. Declaratory judgment is proper under the Declaratory Judgment Act 28 USC S 2201, the Administrative Procedures Act, 5 USC S 702 as well as under any prudential principles that might apply. Summary judgment is proper under federal laws, West Virginia laws, treaty law and the facts of the case.

FACTS OF THE CASE

Katherine A. Hoover MD has practiced medicine in Williamson, West Virginia since 2002. The practice of medicine there has been reviewed several times by the West Virginia Board of Medicine. Katherine A. Hoover MD was supervised by a West Virginia Board of Medicine approved physician for the last eighteen months. Pain treatment is protected by West Virginia Statute: S30-3A-2 (Exhibit A). The office used the pain treatment guidelines promulgated by the West Virginia Board of Medicine (Exhibit B). The medical practice was carefully run to provide care for many patients while discharging patients who were found to be selling or abusing drugs, consistent with the policies established under the CSA. A significant portion of patients were coal miners working in low coal, accident victims, cancer patients, and general

medical patients.  Many of the patients had minimal education, so Dr. Hoover supplied <u>Pass Key to the GED,</u> free of charge to any patient who needed one.  The government has the records to confirm the number of books, but Dr. Hoover estimates that she supplied about 2,000 books.  For those adults who could not read, Dr. Hoover taught them to read.  These efforts in addition to the treatment of the patients' pain, stress and other medical problems allowed many patients to return to work.     As a result of the United States Attorney for the Southern District of West Virginia closing down so many pain clinics, the patient load at 35 West Third Ave. Williamson, W.Va. increased.  The clinic has a long history of trying to recruit competent compassionate doctors who were willing to treat pain, but most feared the loss of their medical license or worse.   Pain patients across the United States are increasingly being disenfranchised from the health care system.

## ACTS BY FEDERAL AGENTS, PROSECUTORS AND JUDGES

The stage for the illegal invasions of medical practices was set by Judge Goodwin when he made a medical judgment regarding prescription written by doctors in southern West Virginia.  Judge Goodwin cannot judge the legality of a prescription; this requires a doctor (Exhibit A).  Judge Goodwin judged , without evidence, that doctors in Southern West Virginia illegally wrote prescriptions.  Ms. Monica Schwartz continued with her illegal investigation of medical practices.  This was illegal because she lacked subject matter jurisdiction and doctors have immunity for the treatment of pain under West Virginia law S30-3A-2 (Exhibit A). The sole document used by John Parr to support the application for a search and seizure warrant was the Affidavit produced by deputized federal agent Michael Smith.   The question is who authorized and funded Mr. Smith to  investigate the medical practice at 35 West Third Ave. Williamson, W.Va. The   informants and individuals facing charges for selling drugs violated West Virginia state law Article 4 S60-4-410 regarding being truthful with a doctor.  The informants, Mr. Smith and Ms. Schwartz are the criminals; the doctor has immunity. The federal agents have acted in bad faith.  The number of prescriptions given is not relevant to the good faith or legality of the prescription (see WVBM rules re: pain treatment, Exhibit B).  Dr. Hoover prevailed against the Florida Board of Professional Regulation using established pain treatment guidelines for cancer pain and applied them in the treatment of chronic non-malignant pain before the Third District Court of Appeals in Miami, Florida.  The attorney for Florida had falsified the number of prescriptions written, but the hearing

examiner allowed the Florida Board's attorney to proceed despite the admission of fraud.  The Dr. Hoover and the clinicians in Williamson used the West Virginia Board of Medicine guidelines for pain treatment (Exhibit B.)

The search and seizure warrant was signed by Magistrate Judge James Seibert on March 1, 2010 and carried out on March 2, 2010.  The affidavit presented by deputized federal agent Smith should have raised sufficient questions for Judge James Seibert to refuse to sign a search and seizure warrant based on jurisdictional and factual grounds.  Judge Seibert should have questioned the validity of statements made by individuals facing criminal charges.  More items were seized than were reported to the Court or put on the list left on the Harrison County property.  The return was not left on that property, but was received by Dr. Hoover when Ms. Becky Moore sent by fed-ex on August 16, 2010 (not August 11, 2010) Mr. Parr's response to Dr. Hoover's Motion and Addendum, Motion regarding unsealing the case and the redacted affidavit.  The return verifying that the inventory was correct was never signed (Exhibit C).  The inventory is not correct.

The response filed by the US Attorney for the Northern District of West Virginia never stated a claim for subject matter jurisdiction. The Motion to Vacate the Search and Seizure Warrant was more than a simple 41(g).  Dr. Hoover went to great lengths to explain the lack of subject matter jurisdiction and the importance of contract law when reviewing the validity of the Search and Seizure Warrant.   Federal agent Smith is not a doctor and his investigation was illegal.  The conclusions that Mr. Smith reached at the end of his affidavit are fraudulent and perjured statements when examined in connection with the relevant laws regarding the practice of medicine, states rights and the fraud by omission regarding the WesBanco account.   Upon information and belief, FBI agent James Lafferty stated that checks from Dr. Rychman were deposited in WesBanco, but committed fraud by omission because he did not mention the August deposit of Mr. Tomasic's check from the law suit settlement for nearly Two hundred thousand dollars.

The practice of medicine, especially pain treatment, is difficult and challenging.  It is not under the jurisdiction of federal agents and federal prosecutors as clearly stated in USC 1801 and Oregon v. Ashcroft 192 Fed Sup 2d 1077.  Mr. Smith, Ms. Schwartz, Mr. Parr and other federal agents made judgments about the patients at 35 West Third Ave. that they do not have the expertise or legal right to make.  By closing the office, federal agents terminated treatment for these very ill patients; they are practicing medicine by default and the Courts have assisted in this activity. This has caused either, directly or indirectly,  suffering, pain and at least one death. Dr.

Hoover has had a worsening of her toxin induced illness, loss of income, loss of reputation and psychological trauma.  Her husband and son, victimized by this federal action, have suffered similarly.

## HISTORY OF THE CASE IN FLORIDA

The boat owned by Dr. Hoover and her husband was illegally entered between March 4th and 6th 2010 and every nook and cranny was disturbed. The objects taken were a prescription bottle with Dilantin for John Tomasic, a prescription bottle for growth hormone prescribed to John Tomasic, a list of phone numbers that contained Ms. Schwartz's number and other important contact numbers and the property list left at Dr. Hoover and Mr. Tomasic's home with items taken from their son Stephen Tomasic.  The second entry to the boat was done some time in April or May 2010  by a federal informant, Steve, last name withheld for his protection.  This federal informant had stolen a computer and two cell phones.   He was caught on the boat by Mr. Tomasic while he was talking to Dr. Hoover by cell phone.  Dr. Hoover was privy to both sides of the conversation.  Mr. Tomasic demanded that the computer be returned or he would call the police.  Steve left and brought the computer back holding it on the backs of his hands.  The computer's memory showed a search for Gonzales which was done by the informant and his female accomplice.  This incident was reported to Dr. Hoover as well as to other people in Florida.

The condo in Hollywood that was part of Dr. Hoover's uncle William Hoover's estate was searched some time in early March.  Two thousand dollars was taken and legal work involving the West Virginia Board of Medicine was scattered about.

## RELEVANT LAW

Previous pleadings have established that the State of West Virginia has jurisdiction over medical practices.  Gonzales and related cases are about states rights and the tenth amendment, not just about assisted suicide.  West Virginia has given immunity to doctors, nurses, and pharmacists for treating pain in (Exhibit A) W.Va. Code S30-3A-2(a) "A physician is not subject to disciplinary sanctions by a licensing board or criminal punishment by the state for prescribing, administering or dispensing pain-relieving controlled substances for the purpose of alleviating or controlling pain if:  (2) In the case of a patient who is not dying and is experiencing pain, the physician

discharges his or her professional obligation to relieve the patient's pain, if the physician can demonstrate by reference to an accepted guideline that his or her practice substantially complies with that accepted guideline. Evidence of substantial compliance with an accepted guideline <u>may be rebutted only by the testimony of a clinical expert.</u>"(emphasis added) Section (b) applies to registered nurses and section (c) applies to pharmacists. This means that Dr. Hoover, other clinicians at the office and the pharmacists have immunity from criminal prosecution from the state; the federal government has no subject matter jurisdiction regarding medical practices; this amounts to federal intrusion of state's rights in violation of the Tenth Amendment and Gonzales.

Under Bevins v.Six Unknown, federal agents who act unconstitutionally are liable for personally for damages and have no immunity. Federal agent Michael Smith presented fraudulent information to Judge Seibert regarding the WesBanco accounts for Dr. Hoover and Mr. Tomasic by claiming that the only money deposited was from checks from Dr. Rychman signed by Myra Miller. These checks were legally written and deposited for the medical care that Dr. Hoover rendered to patients at 35 West Third Ave. Williamson, W.Va. The additional funds were from the law suit 07-C-47 from the Northern District of West Virginia, specifically the check made out to Mr. John Tomasic for nearly $200,000. Dr. Hoover also deposited gifts from her parents and Mr. Tomasic's mother. James Lafferty of the FBI made similar fraudulent statements, upon information and belief, to Magistrate Judge Mary Stanley. The affidavits from the Southern District have not been sent to Dr. Hoover. The fact is that these federal agents in conspiracy with Ms. Monica Schwartz, Mr. John Parr and Magistrate Judge Mary Stanley, invaded the sanctity of a doctor-patient contract without subject matter jurisdiction. Ms. Schwartz has (had) no legal right to send informants into the office because of West Virginia laws: Article 4 S60-410 and S30-3A-2. This act violates the Tenth Amendment, Bivens v. the Six Unknown, and USC 1801, and the exclusionary doctrine applies.

Declaratory judgment is proper under Declaratory Judgment Act, 28 USC S 2201 because the issue of subject matter jurisdiction has been raised extensively by Dr. Hoover and not responded to by Mr. Parr or Ms. Schwartz. The United States Supreme Court ruling in Gonzales clearly indicates the monitoring medical practices is the sole jurisdiction of the states, in this case the State of West Virginia. Declaratory judgment criteria were laid out by the Sixth circuit in Grand Trunk W. R.R. Co. v. Consol Rail Corp, 746 Fed 2d 323 (1984): "(1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the

legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective."  Declaratory judgment is an appropriate remedy in this case because it would (1) settle the case;  it would (2) clarify the legal relations at issue; it is not for (3)  procedural fencing; it would (4) decrease friction between state and federal courts.  (5) There may be a alternative remedy such as summary judgment that is more effective.

## CONCLUSIONS OF LAW

   Ms. Monica Schwartz is guilty of providing training and implementing the use of agent-informants to falsify health problems to the degree that it justified  a prescription for pain relief from Dr. Hoover and the other clinicians, this is illegal in West Virginia:  Article 4 S60-4-410.  It is as if Ms. Schwartz herself entered the office and committed fraud to the doctor.  This and the act of seizing records violates the Fourth and Tenth Amendments directly and the Fifth Amendment by seizing patient records in violation of their privacy rights and USC section 1801.  This activity is a clear breach of subject matter jurisdiction.  The end result of all of these actions by the assistant prosecutor for the Southern District of West Virginia is immense pain and suffering, the removal of required medical care, the seizing of patient records which are essential for continued medical care, and the death of at least one person.  These are extreme human rights violations both in United States and Treaty law described in the Geneva convention and other conventions along with international treaty law involving government corruption.  Ms. Schwartz is guilty of harassing Dr. Hoover to plead guilty.  Ms. Schwartz stated that she always got convictions after such an expensive investigation and Dr. Hoover should accept an eighteen month jail term.  The conversation was so stressful that Dr. Hoover's physician, Dr. Norman Gay, recommended that Dr. Hoover refrain from speaking to Ms. Schwartz ever again.  This conversation is probably taped; Ms. Schwartz stated that Dr. Hoover did not plead guilty; she did not deny the conversation and the harassment.

   Magistrate Judge Mary Stanley failed to uphold the United States Constitution and follow West Virginia law regarding immunity to doctors, nurses, and pharmacists who treat chronic pain.  The affidavits from the Southern District have not been provided, but, upon information and belief,

the information given to Judge Stanley is similar to the information contained in Deputized federal agent Michael Smith's affidavit. West Virginia law clearly states that Dr. Hoover has immunity from criminal prosecution for treating pain patients. The "evidence" cited by Mr. Smith contains a tape from 2005 of Ms. Helsel who has not seen patients at 35 West Third Ave. for several years because of her lack of professionalism; fraud by omission regarding Dr. Hoover's and Mr. Tomasic's WesBanco accounts; testimony of persons at their hearings regarding the sale of their prescriptions (all Judge Thornsbury would have needed to do was contact Dr. Hoover to have these people discharged as patients.); statements by other informants, who violated state law. Any person who read these affidavits carefully would have found them highly suspect and insufficient to justify a search and seizure warrant. The damage to Dr. Hoover and the former patients at 35 West Third Ave. is beyond calculation.

  Deputized federal agent, Michael Smith, produced an affidavit at the conclusion of a six or seven year investigation of the office at 35 West Third Ave. Williamson, W.Va. Mr. Smith did not have subject matter jurisdiction and he violated West Virginia state law. Everything in Mr. Smith's affidavit must be disregarded under the Exclusionary Doctrine. Mr. Smith violated Article 4 S60-4-410 promulgated to forbid his method of investigation and to protect doctors. Mr. Smith's actions and efforts only produced great harm to the State of West Virginia, its residents, and doctors. Doctors, nurses, and pharmacists are specifically given immunity to treat pain under West Virginia S30-3A-2. Mr. Smith was also contemptuous of doctors' constitutional rights and West Virginia state's rights under the Tenth Amendment as applied in Gonzales v. Oregon and the Exclusionary doctrine.

  Assistant U.S. attorney John Parr, in an effort of self preservation, regarded Dr. Hoover's motion filed June 14, 2010 MOTION TO VACATE SEARCH AND SEIZURE WARRANT OF MARCH 1, 2010 AND FOR REMEDIAL ACTION as only a 41g. The motion was to vacate and specific charges were brought which beg a remedy. Mr. Parr made no defense to these charges and cited no authority to grant subject matter jurisdiction to the search and seizure. Mr. Parr violated States rights under the Tenth Amendment which is supported by Gonzales v. Oregon as a result of accepting the affidavit done by Michael Smith and presenting it to Judge Seibert. Mr. Parr knew that Wheeling, W. Va. was not a point of hearing for Harrison county. Mr. Parr knew that there was no subject matter jurisdiction. Mr. Parr held justice and the United States Constitution in contempt by

accepting Mr. Smith's affidavit. As a direct result of Mr. Parr's action, Dr. Hoover, her family, and her property were severely damaged.

Magistrate Judge James Seibert has quite a few issues before him. First, Judge Seibert accepted the odd request to go outside the established point of hearing since there was no emergency. Judge John S. Kaull was in his office until 2:00 PM on February 26, 2010 which is when or after other search warrants were signed by Magistrate Judge Mary Stanley; or the warrant could have waited until Judge Kaull was available in Clarksburg. Another issue is Judge Seibert must have been aware of the planned raid on March 2, 2010 which was the next day. This raises the question of unfair deference shown to the prosecutor and denied Dr. Hoover equal opportunity under the law. Judge Seibert would have been aware of how much planning it takes to coordinate all the raids at once with so many people. There is no defense on Judge Seibert's part; he must be aware of the statutes, the Constitution, and the extensive case law forbidding federal agencies from violating States rights and interfering with the practice of medicine. His action demeaned the standing of the Court and did great harm to Dr. Hoover and her family.

## DAMAGES

1. Loss of income by closure of the office at 35 West Third Ave. Williamson, W.Va. which would be $20,000.00 per month from age sixty (August 25, 2010) to age seventy plus the six months compensation from March 2, 2010. This is $2,520,000.00.

2. Damage to Dr. Hoover's excellent reputation by Ms. Monica Schwartz for giving false press releases which is worth $1,000,000.00.

3. Permanent loss of Dr. Hoover's health by the immense stress placed upon an already weakened condition with the necessary health care at a cost of $4,000,000.00.

4. Loss of West Virginia medical license as a direct result of stress from the false allegations of a criminal nature that put Dr. Hoover in a near death condition so that Dr. Hoover was unable to attend the West Virginia Board of Medicine licensing committee meeting.

5. Loss of the use of the seized assets: house, vehicles, records, receipts, and tax records.

6. Damage to property: house contents damaged, paintings destroyed, thousands of documents maliciously shuffled at least $10,000.00.

7. Cost of responding to unlawful (due to lack of subject matter jurisdiction and immunity for pain treatment) search and seizure warrant at least $20,000.00.

8. Violation of West Virginia's states rights.

## USE OF CERTIFIED QUESTION OF LAW

West Virginia has passed legislation that gives immunity to doctors, nurses, and pharmacists for treating pain patients similar to the Oregon law that allows for the use of controlled substances for assisted suicide. The United States Supreme Court was very clear in Gonzales that the practice of medicine is controlled by the states. Because this is such an important question, it could be submitted as a certified question of law to the United States Supreme Court of original jurisdiction.

WHEREFORE, Katherine A. Hoover MD, pro se, requests that the case from the Southern District of West Virginia 2:10-MJ-0037 (and numbers 28 thru 36) be joined with the Northern District of West Virginia 1:10-MJ-009 for a ruling on subject matter jurisdiction, immunity for doctors, nurses, and pharmacists and Bevins v. Six Unknown under Magistrate Judge John S. Kaull in the interest of judicial efficiency. Dr. Hoover requests that all property be returned to its owners. Katherine A. Hoover MD, pro se, requests that the decision be made on the pleadings.

Respectfully submitted,

*Katherine A. Hoover MD*
Katherine A. Hoover MD
c/o Dr. Norman Gay
247 West Bay St.
Nassau, N.P., Bahamas
304-525-4018

## CERTIFICATE OF SERVICE

Katherine A. Hoover MD hereby certifies that a true and correct copy of the foregoing ADDENDUM TO MOTION FOR SUMMARY JUDGMENT AND MOTION FOR DECLARATORY JUDGMENT, BEVINS V. SIX UNKNOWN has been sent to the United States Attorney for the Northern District and to the United States Attorney for the Southern District by on August 30, 2010.

*Katherine A. Hoover MD*
Katherine A. Hoover MD
c/o Dr. Norman Gay
247 West Bay Street
Nassau, N.P., Bahamas
242-525-4018