

# State of West Virginia
# *Board of Medicine*

101 Dee Drive, Suite 103
Charleston, WV 25311
Telephone 304.558.2921
Fax 304.558.2084
www.wvbom.wv.gov

## Policy for the Use of Controlled Substances for the Treatment of Pain

### Section I: Preamble

The West Virginia Board of Medicine recognizes that principles of quality medical practice dictate that the people of the State of West Virginia have access to appropriate and effective pain relief. The appropriate application of up-to-date knowledge and treatment modalities can serve to improve the quality of life for those patients who suffer from pain as well as reduce the morbidity and costs associated with untreated or inappropriately treated pain. For the purposes of this policy, the inappropriate treatment of pain includes nontreatment, undertreatment, overtreatment, and the continued use of ineffective treatments.

The diagnosis and treatment of pain is integral to the practice of medicine. The Board encourages physicians to view pain management as a part of quality medical practice for all patients with pain, acute or chronic, and it is especially urgent for patients who experience pain as a result of terminal illness. All physicians should become knowledgeable about assessing patients' pain and effective methods of pain treatment, as well as statutory requirements for prescribing controlled substances. Accordingly, this policy has been developed to clarify the Board's position on pain control, particularly as related to the use of controlled substances, to alleviate physician uncertainty and to encourage better pain management.

Inappropriate pain treatment may result from physicians' lack of knowledge about pain management. Fears of investigation or sanction by federal, state and local agencies may also result in inappropriate treatment of pain. Appropriate pain management is the treating physician's responsibility. As such, the Board will consider the inappropriate treatment of pain to be a departure from standards of practice and will investigate such allegations, recognizing that some types of pain cannot be completely relieved, and taking into account whether the treatment is appropriate for the diagnosis.

The Board recognizes that controlled substances including opioid analgesics may be essential in the treatment of acute pain due to trauma or surgery and chronic pain, whether due to cancer or non-cancer origins. The Board will refer to current clinical practice guidelines and expert review in approaching cases involving management of pain. The medical management of pain should consider current clinical knowledge and scientific research and the use of pharmacologic and non-pharmacologic modalities according to the judgment of the physician. Pain should be assessed and treated promptly, and the quantity and frequency of doses should be adjusted according to the intensity, duration of the pain, and treatment outcomes. Physicians should recognize that tolerance and physical dependence are normal consequences of sustained use of opioid analgesics and are not the same as addiction.

The West Virginia Board of Medicine is obligated under the laws of the State of West Virginia to protect the public health and safety. The Board recognizes that the use of opioid analgesics for other than legitimate medical purposes pose a threat to the individual and society and that the inappropriate prescribing of controlled substances, including opioid analgesics, may lead to drug diversion and abuse by individuals who seek them for other than legitimate medical use. Accordingly, the Board expects that physicians incorporate safeguards into their practices to minimize the potential for the abuse and diversion of controlled substances.

B1

Physicians should not fear disciplinary action from the Board for ordering, prescribing, dispensing or administering controlled substances, including opioid analgesics, for a legitimate medical purpose and in the course of professional practice. The Board will consider prescribing, ordering, dispensing or administering controlled substances for pain to be for a legitimate medical purpose if based on sound clinical judgment. All such prescribing must be based on clear documentation of unrelieved pain. To be within the usual course of professional practice, a physician-patient relationship must exist and the prescribing should be based on a diagnosis and documentation of unrelieved pain. Compliance with applicable state or federal law is required.

The Board will judge the validity of the physician's treatment of the patient based on available documentation, rather than solely on the quantity and duration of medication administration. The goal is to control the patient's pain while effectively addressing other aspects of the patient's functioning, including physical, psychological, social and work-related factors.

Allegations of inappropriate pain management will be evaluated on an individual basis. The board will not take disciplinary action against a physician for deviating from this policy when contemporaneous medical records document reasonable cause for deviation. The physician's conduct will be evaluated to a great extent by the outcome of pain treatment, recognizing that some types of pain cannot be completely relieved, and by taking into account whether the drug used is appropriate for the diagnosis, as well as improvement in patient functioning and/or quality of life.

**Section II: Guidelines**

The Board has adopted the following criteria when evaluating the physician's treatment of pain, including the use of controlled substances:

**Evaluation of the Patient**—A medical history and physical examination must be obtained, evaluated, and documented in the medical record. The medical record should document the nature and intensity of the pain, current and past treatments for pain, underlying or coexisting diseases or conditions, the effect of the pain on physical and psychological function, and history of substance abuse. The medical record also should document the presence of one or more recognized medical indications for the use of a controlled substance.

**Treatment Plan**—The written treatment plan should state objectives that will be used to determine treatment success, such as pain relief and improved physical and psychosocial function, and should indicate if any further diagnostic evaluations or other treatments are planned. After treatment begins, the physician should adjust drug therapy to the individual medical needs of each patient. Other treatment modalities or a rehabilitation program may be necessary depending on the etiology of the pain and the extent to which the pain is associated with physical and psychosocial impairment.

**Informed Consent and Agreement for Treatment**—The physician should discuss the risks and benefits of the use of controlled substances with the patient, persons designated by the patient or with the patient's surrogate or guardian if the patient is without medical decision-making capacity.

The patient should receive prescriptions from one physician and one pharmacy whenever possible. If the patient is at high risk for medication abuse or has a history of substance abuse, the physician should consider the use of a written agreement between physician and patient outlining patient responsibilities, including

- urine/serum medication levels screening when requested;
- number and frequency of all prescription refills; and
- reasons for which drug therapy may be discontinued (e.g., violation of agreement).

B-2

**Periodic Review**—The physician should periodically review the course of pain treatment and any new information about the etiology of the pain or the patient's state of health. Continuation or modification of controlled substances for pain management therapy depends on the physician's evaluation of progress toward treatment objectives. Satisfactory response to treatment may be indicated by the patient's decreased pain, increased level of function, or improved quality of life. Objective evidence of improved or diminished function should be monitored and information from family members or other caregivers should be considered in determining the patient's response to treatment. If the patient's progress is unsatisfactory, the physician should assess the appropriateness of continued use of the current treatment plan and consider the use of other therapeutic modalities.

**Consultation**—The physician should be willing to refer the patient as necessary for additional evaluation and treatment in order to achieve treatment objectives. Special attention should be given to those patients with pain who are at risk for medication misuse, abuse or diversion. The management of pain in patients with a history of substance abuse or with a comorbid psychiatric disorder may require extra care, monitoring, documentation and consultation with or referral to an expert in the management of such patients.

**Medical Records**—The physician should keep accurate and complete records to include

1. the medical history and physical examination,
2. diagnostic, therapeutic and laboratory results,
3. evaluations and consultations,
4. treatment objectives,
5. discussion of risks and benefits,
6. informed consent,
7. treatments,
8. medications (including date, type, dosage and quantity prescribed),
9. instructions and agreements and
10. periodic reviews.

Records should remain current and be maintained in an accessible manner and readily available for review.

**Compliance With Controlled Substances Laws and Regulations**—To prescribe, dispense or administer controlled substances, the physician must be licensed in the state and comply with applicable federal and state regulations. Physicians are referred to the Physicians Manual of the U.S. Drug Enforcement Administration and for specific rules governing controlled substances as well as applicable state regulations.

### Section III: Definitions

For the purposes of these guidelines, the following terms are defined as follows:

**Acute Pain**—Acute pain is the normal, predicted physiological response to a noxious chemical, thermal or mechanical stimulus and typically is associated with invasive procedures, trauma and disease. It is generally time-limited.

B-3

**Addiction**—Addiction is a primary, chronic, neurobiologic disease, with genetic, psychosocial, and environmental factors influencing its development and manifestations. It is characterized by behaviors that include the following: impaired control over drug use, craving, compulsive use, and continued use despite harm. Physical dependence and tolerance are normal physiological consequences of extended opioid therapy for pain and are not the same as addiction.

**Chronic Pain**—Chronic pain is a state in which pain persists beyond the usual course of an acute disease or healing of an injury, or that may or may not be associated with an acute or chronic pathologic process that causes continuous or intermittent pain over months or years.

**Pain**—An unpleasant sensory and emotional experience associated with actual or potential tissue damage or described in terms of such damage.

**Physical Dependence**—Physical dependence is a state of adaptation that is manifested by drug class-specific signs and symptoms that can be produced by abrupt cessation, rapid dose reduction, decreasing blood level of the drug, and/or administration of an antagonist. Physical dependence, by itself, does not equate with addiction.

**Pseudoaddiction**—The iatrogenic syndrome resulting from the misinterpretation of relief seeking behaviors as though they are drug-seeking behaviors that are commonly seen with addiction. The relief seeking behaviors resolve upon institution of effective analgesic therapy.

**Substance Abuse**—Substance abuse is the use of any substance(s) for non-therapeutic purposes or use of medication for purposes other than those for which it is prescribed.

**Tolerance**—Tolerance is a physiologic state resulting from regular use of a drug in which an increased dosage is needed to produce a specific effect, or a reduced effect is observed with a constant dose over time. Tolerance may or may not be evident during opioid treatment and does not equate with addiction.

Originally Adopted January 10, 2005
Re-adopted May 10, 2010

WEST VIRGINIA BOARD OF MEDICINE

_____
John A. Wade, Jr., M.D., President

_____
Catherine Slemp, M.D., M.P.H., Secretary