UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

IN THE MATTER OF THE SEARCH OF

KATHERINE A. HOOVER'S RESIDENCE,
LOST CREEK, HARRISON COUNTY,
WEST VIRGINIA.                                         CASE NO. 1:10-MJ-9

### REPORT AND RECOMMENDATION THAT HOOVER'S MOTION TO VACATE AND ADDENDUM BE DENIED

I. Introduction

**A.     Background**

This matter comes before the Court on a search warrant that was issued on March 1, 2010 on the above-captioned residence seeking evidence of a crime; contraband, fruits of a crime, or other items illegally possessed; and property designed for use, intended for use or use in committing a crime related to violations 21 U.S.C. §§ 846, 841(a)(1), 843 (a)(2) and 3 and 18 U.S.C. §§ 1347 and 2.[1]

The search warrant was executed March 2, 2010 and returned March 12, 2010.[2] The return lists financial records and documents, computers and computer records, income tax returns and patient records as among the things seized.

Katherine A. Hoover (hereinafter "Hoover") filed a Motion to Vacate Search and Seizure Warrant of March 1, 2010 and for Remedial Action June 14, 2010.[3]

Hoover filed a Motion to Unseal the Case on July 8, 2010.[4] The Government filed a

---

[1] Dkt. No. 2.

[2] Dkt. No. 3.

[3] Dkt. No. 8.

[4] Dkt. No. 12.

Response to Unseal on August 11, 2010 and a Response to Motion to Vacate Search and Seizure Warrant of March 1, 2010 for Remedial Action on August 11, 2010.[5]

Hoover filed a Motion for Summary Judgment on August 13, 2010, Addendum to Summary Judgment on August 31, 2010, Motion to Recuse Judge James E. Seibert on October 14, 2010, and Motion for Default Judgment on October 14, 2010.[6]

## I.  Motion for Return of Property[7]

**A.     Contentions of the Parties**

In her Motion, Hoover argues five counts as a basis for the relief she seeks.  Hoover first attacks the validity of the warrant by arguing "[t]he Court could not have reviewed the affidavits properly because the alleged affidavits contained false information." See Hoover's Mot. to Vacate (Dkt. 8).  Hoover also argues the United States Supreme Court "in Gonzalez v. Oregon, 546 U.S. 243, eliminated federal jurisdiction over doctors who prescribed legal medications," therefore, subject matter jurisdiction is deficient in the pending action. Id. at 2.  Hoover contends Monica Schwartz, Esq. should be held in contempt of court because Ms. Schwartz used "the color of her office to illegally, without subject matter jurisdiction, entrap doctors in violation of West Virginia law and federal law." Id.  Additionally, Hoover argues the "DEA, FBI and State Police" are guilty of fraud. Id. at 3.  Lastly, Hoover argues Southern District of West Virginia Judge Goodwin's public statements "concerning the physicians of southern West Virginia...cast

---

[5] Dkt. Nos. 16 & 18, respectively.

[6] Dkt. Nos. 19, 20, 24, & 25, respectively.

[7] The Court is aware Ms. Hoover did not file a separate Motion for Return of Property. Nevertheless, the Court construes Hoover's "Motion to Vacate Search and Seizure Warrant of March 1, 2010 and for Remedial Action" as a Motion for Return of Property due to the relief Hoover requests.

a strong bias against doctors...[which] is sufficient grounds to request that Judge Goodwin step down from the bench." Id. at 4.

In Hoover's Addedum to her Motion to Vacate, Hoover argues "no legal notice has ever been received by Katherine A. Hoover MD...[or] to her husband, John F. Tomasic." See Addendum to Mot. to Vacate, pg. 1 (Dkt. 11). Hoover also renews her arguments regarding the lack of subject matter jurisdiction and the Court's duty "to uphold the Constitution and to protect the rights of the people." Id. at 2.

Hoover requests "this Court find Ms. Monica Schwartz in [c]ontempt of [c]ourt, that a proper investigation be done regarding multiple human rights violations, and that all property be returned and damages paid for property damage and lost wages." See Hoover's Mot. to Vacate, Pg. 4 (Dkt. 8).

The Government has not responded to the motion.

**B.     Discussion**

Motions to return property are governed by Federal Rule of Criminal Procedure 41(g). The rule, in relevant part, provides "[a] person aggrieved by an unlawful search and seizure of property...may move for the property's return...in the district where the property was seized. Fed. R. Crim. P. 41(g). Where the search and seizure in question is found to be constitutionally valid, and therefore not "unlawful," the Rule 41(g) remedy is unavailable. United States v. Sweeney, 688 F.2d 1131, 1132 (7th Cir. 1982). The burden is on the movant to make specific factual allegations of illegality, to produce evidence, and to persuade the court that the evidence should be suppressed. See United States v. De La Fuente, 548 F.2d 528 (5th Cir. 1977). "For an owner of property to invoke Rule 41(g), he must show that he had a possessory interest in the property seized by the government." United States v. Howell, 425 F.3d 971, 974 (11th Cir. 2005). The

government must then establish a legitimate reason to retain the property. See United States v. Kaczynski, 416 F.3d 971, 974 (9th Cir. 2005).  While Rule 41(g) waives sovereign immunity to allow the return of property, sovereign immunity is not waived to allow monetary damages. United States v. Hall, 269 F.3d 940, 943 (8th Cir. 2000).

Additionally, entertaining a pre-indictment Fed. R. Crim. P. 41(g) motion is an exercise of equitable jurisdiction. See In re Search of Kitty's East, 905 F.2d 1367, 1370 (10th Cir. 1990). Therefore, while district courts have the power to hear pre-indictment return of property motions, the court must exercise caution and restraint before assuming jurisdiction. United States v. Kama, 394 F.3d 1236, 1238 (9th Cir. 2005), *quoting*, Ramsden v. United States, 2 F.3d 322, 324 (9th Cir. 1993) (internal quotation marks omitted); see also Marshall v. Central Mine Equip. Co., 608 F.2d 719, 721 (8th Cir. 1979).  The considerations that govern a district court's decision on whether to exercise this anomalous jurisdiction include whether: 1) "the Government displayed a callous disregard for the constitutional rights of the movant;" 2) "the movant has an individual interest in and need for the property he wants returned;" 3) "the movant would be irreparably injured by denying return of the property;" and 4) "the movant has an adequate remedy at law for the redress of his grievance." Kama, 394 F.3d at 1238.  If the balance of equities tilts in favor of reaching the merits' of the Rule 41(g) motion, the district court should exercise its equitable jurisdiction and hear the motion. Ramsden, 2 F.3d at 326.

The Court addresses each factor in turn.

    **1.**    **Callous Disregard for Hoover's Constitutional Rights**

To satisfy the first prong of the equitable jurisdiction test, Hoover must contest the constitutional validity of the search and seizure.  Standing for such a challenge requires a movant to show the infringement of a personal interest which the Fourth Amendment was designed to

shield. United States v. Horowitz, 806 F.2d 1222, 1224 (4th Cir. 1986). This personal interest is demonstrated by "a reasonable expectation of privacy in the area searched, not merely in the items found,...and the burden is upon the movant to prove his reasonable or legitimate expectation of privacy." Id.  See also United States v. Evans, 572 F.2d 455, 486 (5th Cir. 1978) (finding determinative inquiry for standing no longer turns upon concepts of ownership or possession of the items seized). "Ownership of the item seized is, by itself, insufficient to confer a privacy interest in the area searched." United States v. Manbeck, 744 F.2d 360, 374 (4th Cir. 1984). Hence, standing to assert a Fourth Amendment violation must be founded solely upon a legitimate privacy interest in the premises searched. United States v. Dunn, 674 F.2d 1093, 1098 (5th Cir. 1982). Three requirements must be established for purposes of Fourth Amendment standing: 1) the movant's interest in and control of the area searched; 2) the movant's subjective expectation of privacy in the area as evidenced by his efforts to ensure that privacy; and 3) society's willingness to recognize that expectation as a reasonable one. Horowitz, 806 F.2d at 1225.

  The Court finds Hoover has met the Fourth Amendment standing requirements necessary to permit Hoover to demonstrate her allegation of callous disregard of the Fourth Amendment in the pending case because the search and seizure of items occurred in her private residence. Despite Hoover's standing to oppose the search and seizure, Hoover's argument must still fail.

  Hoover, in her Motion to Vacate, asserts the alleged lack of subject matter jurisdiction as grounds for the Court to grant her motion. Hoover essentially argues Gonzalez v. Oregon, 546 U.S. 243, eliminated federal court jurisdiction over doctors who prescribed legal medications. Prior to reaching the Supreme Court, the Gonzalez case was captioned Oregon v. Ashcroft, 192 F. Supp. 2d 1077 (D. Or. 2002) which was an Oregon district court case evaluating issues

associated with physician assisted suicide. An evaluation of the procedural history of Oregon and Gonzalez is necessary.

In Oregon, a doctor, pharmacist, several terminally ill patients, and the State of Oregon challenged the Ashcroft Directive because it criminalized conduct specifically authorized by Oregon's Death with Dignity Act. Id. at 1079. The district court, in entering the injunction, determined Congress did not intend the Controlled Substances Act (hereinafter "CSA") to override a state's decision concerning what constituted legitimate medical practices in the absence of an express federal law prohibiting that practice. Id. at 1089. Additionally, the court held that nothing in the plain language of the CSA demonstrated Congress' intent to grant defendants the authority under the CSA to determine that prescribing controlled substances for purposes of *physician assisted suicide* in compliance with state law was not a legitimate medical purpose. Id. at 1089-90. (emphasis added).

The Oregon defendants filed a petition for review which was granted by the Court of Appeals for the Ninth Circuit. See Oregon v. Ashcroft, 368 F.3d 1118 (9th Cir. 2004). Although the circuit court ordered the district court's injunction continued, it expressly limited the scope of its opinion by stating "the question before us is whether Congress authorized the Attorney General to determine that *physician assisted suicide* violates the CSA." Id. at 1124 (emphasis added).

The Supreme Court of the United States granted the State of Oregon's petition for writ of certiorari and affirmed the appellate court's decision. See Gonzalez v. Oregon, 546 U.S. 243 (2006). The United States Supreme Court, in upholding the lower court's decision, also stated it was deciding whether the CSA could be read as prohibiting *physician-assisted suicide*. Id. at 270 (emphasis added). The Court's specific holding was that "the CSA's prescription requirement

does not authorize the Attorney General to bar dispensing controlled substances for assisted suicide in the face of a state medical regime permitting such conduct." Id. at 275-76.

Upon review of Hoover's cited case, the Court finds it inapplicable and unpersuasive to the pending litigation.  The scope of both Oregon and Gonzalez is limited to the Attorney General's authority granted under the CSA as applied to *physician-assisted suicide*.  (emphasis added).  Accordingly, the Court finds Oregon and Gonzalez distinguishable from the current litigation.

In attempting to demonstrate callous disregard of her constitutional rights, Hoover attacks the constitutional validity of the search warrant as issued.  Hoover argues "the Court could not have reviewed the affidavits properly because the alleged affidavits contained false information." See Hoover's Mot. to Vacate, pg. 1 (Dkt. 8).  Hoover contends Ms. Schwartz "knowingly filed fraudulent documents with this Court to illegally obtain documents" and "knew she lacked subject matter jurisdiction, but [] proceeded anyway." Id. at 2.  Moreover, Hoover also contends the Court "failed to verify the information provided and its jurisdiction." Id. at 1.  The Court directs Hoover to Fed. R. Crim. P. 41(b), which provides:

> At the request of a federal law enforcement officer or an attorney for the government, a magistrate judge with authority in the district...has authority to issue a warrant to search for and seize a person or property located within the district.

Fed. R. Crim. P. 41(b).

Hoover's residence, that was the subject of the search warrant in question, is located in Harrison County, West Virginia.  Harrison County is within the jurisdiction of the Northern District of West Virginia courts.  Magistrate Judge Seibert is a judicial officer in the Northern District of West Virginia and, thus, is vested with judicial authority to issue a search warrant for property within the Northern District.  See Untied States v. Strother, 578 F.2d 397, 399 (D.C. Cir. 1978)

(finding search warrant operative in territory where issuing officer is clothed with judicial authority); State v. Rupnick, 125 P.3d 541 (Kan. 2005) (finding search warrant execution required in judicial district in which magistrate judge resided).

The gist of Hoover's argument essentially is: the search warrant is invalid due to the absence of subject matter jurisdiction on the part of Magistrate Judge Seibert and the United States Attorneys. There is a presumption of validity, however, that surrounds the issuance of a search warrant, the underlying affidavit and the determination of probable cause prompting the issuance of the warrant. See e.g., Sando v. United States, 469 U.S. 1079 (1984); Franks v. Delaware, 438 U.S. 154, 171 (1978); United States v. Betancourt, 734 F.2d 750, 754 (11th Cir. 1984). To defeat the presumption of validity, the movant must allege and show that the supporting affidavit cannot demonstrate more than a mere suspicion of illegal activity. See, e.g., United States v. Anton, 633 F.2d 1252, 1254 (7th Cir. 1980); United States v. Giacalone, 541 F.2d 508, 513 (6th Cir. 1976); In re Motion to Quash Grand Jury Subpoenas, 593 F. Supp. 184, 189 (S.D.W. Va. 1984). Here, the presumption of validity of the issued warrant remains unassailed due to Hoover's failure to negate the probable cause determination. Hoover merely relies on her conclusory and unsubstantiated allegations and fails to deny the facts alleged in the warrant's supporting affidavit or to assert substantiated facts to the contrary. The Court considered Hoover's assertion that "statements made by lying informants are illegal," and "because of Mr. Parr's...previous close association with Ms. Schwartz it appears that it would be difficult for him to remain neutral" as an attempt to rebut the validity of the warrant, but finds such a general statement to be insufficient to do so. Such absence of proof cannot reduce the probable cause determination to the necessary mere suspicion of illegal activity to permit Hoover to rebut the warrant's presumption of validity.

Property searched and items seized pursuant to a valid search warrant, issued upon a determination of probable cause by an impartial and detached official and specifically defined as to its permissive scope, have been lawfully searched and seized. United States v. Place, 462 U.S. 696, 701 (1983); Marron v. United States, 275 U.S. 192, 196 (1927). Here, the issued search warrant resulting in the search and seizure of items from Hoover's residence is constitutionally valid thus rendering the ensuing search and seizure reasonable. Accordingly, both the warrant and the search and seizure were within the permissive boundaries of the Fourth Amendment and the Court can find no callous disregard of Hoover's constitutional rights.

The Court cannot exercise its exceptional equitable jurisdiction to order the return of the seized property because Hoover cannot satisfy the requisite callous disregard factor. Nonetheless, the Court will examine the remaining factors in the interest of justice.

### 2.     Hoover's Individual Interest In and Need for Property

The Court finds this factor in favor of Hoover as the items seized were from her personal residence.

### 3.     Resulting Irreparable Injury to Hoover From a Denial

Irreparable injury caused by the search and seizure of Hoover's residence is, undoubtedly, detrimental to Hoover. She claims the raid "violated persons right to treatment and (Dr. Hoover's right to care for them), houses, papers, and effects against unreasonable searches and seizures." See Addendum to Hoover's Mot. to Vacate, pgs. 2-3 (Dkt. 11). Hoover also alleges Monica Schwartz, Esq., a United States Attorney in the Southern District of West Virginia, "issued a false press release claiming that Dr. Hoover was 'fleeing prosecution' when Ms. Schwartz clearly knew that there was no legal basis or jurisdiction for prosecution...." Id. at 2. While this likely resulted in severe detriment to Hoover's business reputation and fiscal well-

being, the Court refuses to speculate as to the degree of injury suffered by Hoover. Hoover has provided insufficient evidence of irreparable injury which prevents satisfaction of this prong of the equitable jurisdiction test. Moreover, any detriment suffered by Hoover as a result of property deprivation is an unavoidable consequence of a lawful search and seizure and the reasonable ensuing retention of property.

    **4.    An Adequate Remedy at Law Exists to Redress Hoover's Grievance**

Hoover has also failed to demonstrate an inadequate remedy at law should this Court decline to exercise its equitable jurisdiction. If Hoover were successful in proving a Fourth Amendment violation, such violation would entitled her to an adequate remedy at law: a personal cause of action against the federal officials at fault. See, e.g., Boykin v. District of Columbia, 689 F.2d 1092, 1095 (D.C. Cir. 1982). This personal cause of action would prevent satisfaction of the "inadequate remedy at law" factor of the equitable jurisdiction test. Hoover, however, has failed to demonstrate governmental noncompliance with regard to her constitutional rights. Without a constitutional violation, the concept of governmental immunity prevents a personal cause of action against the federal agents who were acting within the scope of their authority in seizing items under a valid warrant. See, e.g., Wallace v. King, 626 F.2d 1157, 1161 (4th Cir. 1980). While this would constitute an inadequate remedy at law, it would require Hoover to concede her constitutional rights were not callously disregarded thus solidifying Hoover's inability to satisfy the "callous disregard" factor without coming up short on the "inadequate remedy at law" factor. Moreover, "should criminal proceedings be instituted, [Hoover] will have an adequate remedy to challenge the search...." In re Search of 4801 Flyer Ave., 879 F.2d 385, 398 (8th Cir. 1989).

Hoover's inability to satisfy the test for the Court to exercise its exceptional equitable

jurisdiction justifies the denial of Hoover's Motion for the return of property.  The Court cannot provide a pre-indictment equitable remedy for Hoover because the search and seizure in question is lawful as pursuant to a validly issued warrant.

Lastly, Hoover's Motion and Addendum also address fraud on the part of the DEA, FBI and West Virginia state police, a lack of notice of the search and seizure, as well as, what appears to be a recusal motion pertaining to Judge Goodwin.  The Court has evaluated Hoover's arguments and finds her fraud and recusal arguments not relevant to the ultimate issue in question: whether the warrant was validly issued.  The lack of notice of the warrant and supporting affidavit together, is not, in itself, so fatally defective as to render the ensuing search and seizure unconstitutional. See United States v. Hubbard, 493 F. Supp. 209, 219 (D. D.C. 1979), aff'd 668 F.2d 1238 (D.C. Cir. 1981).  Accordingly, Hoover's arguments must fail.

**C.     Recommendation**

It is recommended Hoover's Motion to Vacate and Addendum be **DENIED** for the aforementioned reasons.

Filing of objections does not stay this Order.

Any party who appears pro se and any counsel of record, as applicable, may, within fourteen (14) days from the date of this Report and Recommendation , file with the Clerk of the Court the written objections identifying the portions of the Report and Recommendation  to which objection is made, and the basis for such objection.  Failure to timely file objections to the Report and Recommendation  set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

The Clerk of the Court is directed to provide a copy of this Report and Recommendation

to parties who appear pro se and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: December 30, 2010

/s/ *James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE